PER CURIAM.
Jupiter Mall Realty Corp. (Jupiter Mall) appeals from a final judgment entered in favor of appellee, Rosner’s Inc., on Jupiter Mall’s suit to recover various amounts it claimed Rosner’s owed as a result of a breach of Rosner’s lease obligations. We affirm in part and reverse in part.
Jupiter Mall’s suit alleged that Rosner’s breached a lease agreement with Jupiter Mall by failing to make payments for common area maintenance (hereinafter CAM), insurance, and real estate taxes. Rosner’s executed a lease agreement with Achill Properties, Inc. on February 23, 1988. The lease was assigned to Jupiter Mall when it purchased the Jupiter Mall on February 28, 1990. Rosner’s had no responsibility to pay rent pursuant to the terms of the lease until Star Value opened in the mall, an event which never occurred. 'Jupiter Mall sought only to recover for Rosner’s failure to pay CAM, insurance, and real estate taxes.
Rosner’s responded to Jupiter Mall’s complaint, alleging as affirmative defenses Jupiter Mali’s breach of the lease agreement and a setoff to include the amount of the security deposit, an electrical repair bill, carpeting expenses, and miscellaneous repair costs. Rosner’s alleged that Jupiter Mall breached the lease by failing to install a pylon sign as required by the lease, failing to make repairs including roof repairs, charging for CAM and taxes without making payments as required, failing to maintain the appearance of the mall, making false representations regarding key tenants that would be moving into the mall, failing to secure skylights, failing to install carpeting, and failing to pay for electrical wiring.
The case proceeded to trial on October 17, 1991. Carolyn Karpinski, a regional manager and officer of Southern Realty Management Corporation (the management corporation handling the Jupiter Mall property), testified that she began working for Jupiter Mall in September of 1989. She was responsible for securing bids and executing contracts for the maintenance of the mall, and then sending this information to New York where the bookkeeping department was located.
During Karpinski’s testimony Jupiter Mall attempted to admit certain insurance records kept in the New York office, presumably to prove Jupiter Mall’s claim regarding insurance bills unpaid by Rosner’s. •Rosner’s objected to the records as hear *492 say, and the court ruled that Karpinski was not the custodian of the records or a qualified witness within the exception to the hearsay rule allowing admission of records kept in the course of a regularly conducted business, section 90.803(6), in that Karpin-ski had no knowledge as to how or why these records were kept by the New York office. We affirm as to the trial court’s exclusion of these records.
During Karpinski’s testimony Jupiter Mall admitted several documents showing CAM bills, including maintenance of the parking area, landscaping, water, and telephone. Karpinski testified that the total amount Rosner’s owed Jupiter Mall for expenses from February 28, 1990 (the date Jupiter Mall purchased the mall from Achill Properties) to the date of trial, October, 1991, was $23,022.73. Expenses unpaid by Rosner's from the date Rosner’s took occupancy at the mall in 1988 to the time of trial totalled $44,636.83.
On cross-examination Karpinski admitted that Achill Properties had not paid real estate taxes during 1988 and 1989. A photograph of a Rosner’s sign was admitted into evidence,' the sign having been erected in March of 1990.
Robert Ylitalo, the past manager of the Rosner’s store in the Jupiter Mall testified that on the day of the store’s grand opening, the roof was leaking because of a heavy rain. Ceiling tiles were damaged, at least three big screen televisions were damaged, and a portion of the warehouse could not be used because of leaking water. About three months before Rosner’s closed, a sign was placed on the Indiantown Road entrance. Ylitalo testified that one of the store bathrooms did not work, and the outside of the mall was undergoing construction.
The president of Rosner’s, Leonard Ros-ner, testified that the lease agreement called for two signs to be placed on pylons on both Indiantown Road and U.S. 1, and that a sign was never placed on the U.S. 1 pylon, although a temporary vinyl sign was placed on Indiantown Road. Rosner testified that the contract clause regarding signs was of the utmost importance to him because visibility of the store was essential. Rosner testified to expenses his company incurred at the Jupiter Mall location that were to be reimbursed according to the terms of the lease, including refuse collection, electrical work, carpentry work, a store sign over the building, a security system, a carpeting expense (1,002.33 sq. yds.), and air conditioning work. Rosner’s eventually moved out of the mall on June 30, 1990.
On cross-examination, Rosner admitted that the closing of a Publix store in the Jupiter Mall played a part in his decision to close the Rosner’s store in that mall.
Sy Scheckner, Mr. Rosner’s assistant, testified that he had made complaints to the various landlords at the Jupiter Mall, and was consistently told that problems with the building would be taken care of. Problems with the premises were ignored by Southern Realty Management Corp. Scheckner also testified to conversations he had with Achill properties regarding new signs to be placed on Indiantown Road and U.S. 1, including a sketch of the new signs. Jupiter Mall objected to the admission of this testimony and sketch on the ground that this conversation was “outside the lease.” The trial court admitted the evidence concerning the signs, and on cross examination Scheckner could not recall whether the conversations with Achill took place before or after the lease was signed.
The trial court entered final judgment, in which it concluded that Rosner’s was entitled to terminate its lease with Jupiter Mall at any time after Rosner’s made Jupiter Mall aware of material breaches of the lease agreement and it became apparent that Jupiter Mall was not going to remedy those breaches within a reasonable period of time. The trial court found that Achill Properties had failed to pay real estate taxes in 1988 and 1989, the years for which Jupiter Mall was attempting to recover real estate taxes from Rosner’s. The court concluded that Jupiter Mall had no right to collect tax money that Rosner’s never paid. Further, the court determined: “the re-coupments of the Defendant corporation [Rosner’s] easily exceed the claim of the *493 Plaintiff [Jupiter Mall]. The Court calculates the maximum liability of the Defendant to the Plaintiff to be $15,069.99 however the Court calculates the minimum re-coupment to be $24,605.00.” It was the judgment of the court that Jupiter Mall take nothing from Rosner’s. This appeal followed.
Appellant has failed to demonstrate error as to the trial court’s evidentiary rulings, or as to its ultimate finding that Rosner’s was entitled to terminate the lease based on Jupiter Mali’s breach of its obligations under the lease. Accordingly, we affirm as to these issues.
We are unable, however, to agree with the trial court’s determination that Rosner’s was not obligated to pay its .pro rata share of the real estate taxes, up to the date Rosner’s vacated the mall, on the basis that neither Jupiter Mall nor its predecessor had paid the taxes. To be sure, the tax liability, when paid, is not something that would enure to Jupiter Mali’s benefit, except to the extent it would reduce their obligation to the taxing authority. Since our reversal on this point goes to the heart of the trial court’s ruling that the recoupments due Rosner’s would exceed any amounts due from Rosner’s to Jupiter Mall, a remand is necessary.
On remand, the trial court may either recalculate the respective amounts due, allowing Jupiter Mall’s entitlement to the unpaid taxes, on the existing record, or at its discretion, take additional evidence.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
POLEN, JJ., and DIMITROULEAS, WILLIAM P., Associate Judge, concur.
WARNER, J., concurs specially without opinion.